HOWLAND (UNITED STATES v.). See Case No. 15,406.

---

## Case No. 6,802.

### HOXIE v. CARR et al

[1 Sumn. 173.] [1]

Circuit Court, D. Rhode Island. June Term, 1832.

Bill in Equity to Wind Up Partnership—Who Are Proper Parties — Abatement of Suit — Transfer of Interest Pending Suit—Supplemental Bill—Partnership Property—Rights of Partners and Creditors upon Dissolution —Real Estate—Resulting Trust—Notice.

1. All persons in interest must be made parties to proceedings in equity before a decree.

[Cited in Bryant v. Russell, 23 Pick. 523; Norris v. Bean, 17 W. Va. 661.]

2. The mortgagees, under a conveyance made before the filing of a bill in equity in relation to the premises mortgaged, should be made parties; as should also the mortgagor; but their omission is no necessary cause of abatement of the suit.

[Cited in Taylor v. Rasch, Case No. 13,801; Chester v. Chester, 7 Fed. 4.]

3. The abatement of a suit in equity is merely an interruption to the suit, suspending its progress, until new parties are brought before the court.

4. Where there is a transfer of interest pendente lite, a supplemental bill may be filed by or against the purchasers.

[Cited in Bajorques v. U. S., Case No. 761; Miller v. Rogers, 29 Fed. 402.]

1 [Reported by Charles Sumner, Esq.]

5. Creditors are not necessary or proper parties generally in a bill between partners to wind up the partnership concerns.

[Cited in Tracy v. Walker, Case No. 14,129.]

[Cited in Chester v. Dickerson, 54 N. Y. 7; Johnson v. Hersey, 70 Me. 74.]

6. In the absence of fraud and breach of trust, property purchased with partnership funds does not of necessity become partnership property, if that is not the intention of the parties.

7. The circumstance, that the payment for property purchased has been made out of the partnership funds, especially if the property be necessary for the ordinary operations of the partnership, and be actually so employed, in the absence of controlling circumstances, will be decisive, that it was intended to be held as partnership property.

[Cited in Smith v. Burnham, Case No. 13,019.]

[Cited in Tillinghast v. Champlin, 4 R. I. 206; Ebbert's Appeal, 70 Pa. St. 80; Alkire v. Kahle, 123 Ill. 504, 17 N. E. 693.]

8. Upon a dissolution of a partnership, each partner has a lien upon the effects, as well for his own indemnity against the joint debts, as for his proportion of the surplus; but the creditors of the partnership, as such, have no lien upon the partnership effects for their debts.

[Cited in Thrall v. Crampton, Case No. 14,008.]

[Cited in Ferson v. Monroe, 21 N. H. 468; Lang v. Waring, 25 Ala. 625; Crooker v. Crooker, 46 Me. 260; Arnold v. Wainwright, 6 Minn. 370 (Gil. 241); Johnson v. Hersey, 70 Me. 76; McMillan v. Hadley, 78 Ind. 594; Sickman v. Abernathy, 14 Colo. 174, 23 Pac. 450.]

9. Where real estate is purchased for partnership purposes, and on partnership account, let the legal title be vested in whom it may, as where the conveyance is taken to the partners as tenants in common, it will, in equity, be deemed partnership property, and, like other effects, personal estate; and the partners are the cestuis que trust. But a court of law must view it, in general, only according to the legal title.

[Cited in Macy v. De Wolf, Case No. 8,933.]

[Cited in Sage v. Sherman, 2 N. Y. 429; Buchan v. Sumner, 2 Barb. Ch. 201; Jarvis v. Brooks, 27 N. H. 67; Tillinghast v. Champlin, 4 R. I. 212; Buffum v. Buffum, 49 Me. 111; Butterfield v. Beardsley, 28 Mich. 425; Foster's Appeal, 74 Pa. St. 395; Hardy v. Norfolk Manuf'g Co., 80 Va. 417.]

10. Semble, that as between the executor or administrator of a deceased partner and his heir or devisee, it is considered, in equity, as personalty.

11. Rules as to the creation of resulting trusts.

[Cited in Hutchins v. Heywood, 50 N. H. 498; Sherwood v. St. Paul & C. Ry. Co., 21 Minn. 130; Hudson v. White, 17 R. I. 523, 23 Atl. 57.]

12. Semble, that the exception in the statute of frauds in England and Massachusetts, as to resulting trusts, is merely affirmative of the general law, and does not create a saving of resulting trusts, which would otherwise have been cut off, unless in writing. Accordingly, in Rhode Island, where the statute of frauds contains no such exception, resulting trusts are on the same footing as in England and Massachusetts.

13. Where purchasers of real estate, at the time of their purchase, have actual or constructive notice, that it was partnership property, it will be chargeable in their hands with

the payment of the partnership debts, even though they have no notice of the existence of these partnership debts. If they have no notice that it was partnership property, they are exonerated to the extent of the purchase-money already paid by them; and, so far as the purchase-money has not been paid, that is a substituted fund, chargeable in their hands with the same burthens as the real estate.

[Cited in Jones v. Van Zandt, 5 How. (46 U. S.) 225.]

[Cited in Dyer v. Clark, 5 Metc. (Mass.) 566.]

14. Circumstances under which notice will be implied.

This was a bill in equity, framed with a double aspect. It stated a partnership between Joseph Hoxie, the plaintiff, and Simon Reynolds, one of the defendants, in the manufacture of cotton cloths, under the firm of the West Greenwich Manufacturing Company; and the possession and purchase of certain real estate, including the factory, and other appendages, out of the joint funds of the partnership, which were occupied, used, and improved, for the benefit of the partnership; a dissolution of the partnership in March, 1826, with large debts owing by the company; a parol contract for the sale by Reynolds to Hoxie, upon certain conditions, of all his share in the partnership property, and a part-performance in June following of the conditions of the contract of sale on the part of Hoxie, and an offer to perform the residue; a possession of the premises under the sale by Hoxie; a subsequent sale by Reynolds to Nathan Carr and Jesse Carr (two of the defendants) of his share in the real estate aforesaid; which last sale it charges to be fraudulent, and with notice of Hoxie's contract, and with intent to defraud creditors; and it charges a subsequent payment by Hoxie of a large part of the partnership debts; and the insolvency of Reynolds. It then prays for a specific performance by Reynolds, and a conveyance by his grantees according to his contract with Hoxie, and for an injunction, &c.; or, if that cannot be done, it prays for an account of the partnership debts, and that the real estate may be charged with the amount; and for further relief. The answers admitted the partnership; denied the contract of sale to Hoxie, and part-performance; and asserted that the conveyance to the defendants, the Carrs, was bona fide, and without notice; and that the real estate so sold was not partnership property; but, though paid for out of the partnership funds, was purchased and held by the partners as tenants in common, and not otherwise. The owners also admit the possession by Hoxie, but insist that it was by wrong, and not by contract. The answer of Reynolds also asserted, that Hoxie, in December, 1827, (before the filing of his bill) had mortgaged to certain persons (Hopkins, Arnold, and Briggs) the half of the premises asserted to be bought of him, whereby Hoxie was now disabled to perform the contract set up by him. Other matters not now material

to be mentioned occurred in the answer of one of the defendants, Nichols. By a supplementary answer, the defendants further alleged, that since the commencement of the suit and the filing of the answers, viz. in July, 1830, Hoxie had executed a conveyance to one A. Hopkins of all the right, title, interest, and claim, which he had in the premises in the bill mentioned; and also, that the sheriff's sales of two of the lots of the real estate in the bill mentioned, had been made under executions against Hoxie. The bill, so far as it respects Amos Reynolds, to whom one lot of the real estate in controversy was conveyed, was dismissed, since he has never been made a party by the service of any process upon him. The general replication having been filed, and evidence taken, the cause came on to be argued upon the merits; and at the argument the following points were presented for the consideration of the court: First, whether it was competent for the plaintiff to maintain his bill after the mortgage made by him as stated in the original answers; and if it was, whether the conveyances, pendente lite, do not abate the suit. Secondly, whether the parol contract by Reynolds with Hoxie for a sale, was sufficiently established in point of fact; and if so, whether, in point of law, the party under the circumstances was entitled to a decree for a specific performance. Thirdly, whether the real estate would, under all the circumstances, be deemed partnership property, since the conveyances thereof were to the partners, as tenants in common; and if it was to be deemed partnership property, whether the plaintiff was entitled to any relief against the present defendants, who were purchasers.

Richard W. Greene and J. Whipple, for plaintiff.

J. L. Tillinghast and N. Searle, for defendants.

STORY, Circuit Justice. This cause has been most fully and elaborately argued upon all the points, and, since he is now no more, I may be permitted to say (what I should feel compelled to suppress in regard to the living) by one of my brethren,[2] whose loss we all deplore, with the consummate skill and profound learning, which always distinguished him. As to the first question, I think, that the objection is well founded in principle, though not to the extent of the line of the argument. It is impossible, that a decree can be made in favor of the plaintiff to bind the mortgagees under the conveyance made before the bill filed, unless they are made parties. They have an interest, which cannot be overlooked by the court, not wholly displacing that of the plaintiff, who, as mortgagor, still retains an interest, but concurrent with it. It would be hard upon the defendants to compel them

---

[2] Mr. Searle is here alluded to by the court.

to go on to a decree, which, whether in favor of or against them, would still not be binding on the mortgagees. The latter, in every possible aspect of the case, have an interest in the matter of the bill, whether it be viewed as a bill for a specific performance, or a bill for a settlement of the partnership accounts, and a charge upon the real estate. Suppose there should be a decree charging the estate, as partnership property, with the partnership debts, how could the court proceed to decree a sale to satisfy those debts, unless the mortgagees were made parties? The general rule, that all persons in interest must be made parties before a decree, is clearly applicable to the present case. But the omission of such parties is no necessary cause of abatement of the suit. That can arise only from matters subsequent to the bill. It may be ground, at the hearing, for a dismission of the bill without prejudice for want of proper parties, or for an order, that the bill shall stand over to make new parties, with leave to file a supplemental bill. See Coop. Eq. Pl. pp. 63, 64, 73–75, c. 1, § 4; Id. p. 214, c. 3, § 4; Goodwin v. Goodwin, 3 Atk. 370; Whitcomb v. Minchin, 5 Madd. 91; Foster v. Deacon, 6 Madd. 59; Bishop of Winchester v. Beavor, 3 Ves. 314. As to the conveyance of the plaintiff, as well as the sheriff's deeds executed pendente lite, if they had disposed of all the rights of the plaintiff, there would certainly have been an end to his bill for a total defect of merits; for it is very clear that no party can stand before the court for a decree, who has no farther interest in the suit, either formal or real. Coop. Eq. Pl. p. 166, c. 3, § 2; Id. p. 196, § 3; Id. pp. 210–212, § 4; Harris v. Pollard, 3 P. Wms. 348; Benfield v. Solomons, 9 Ves. 77. And where the interests of new parties intervene, pendente lite, having derivative titles under the plaintiff, there the suit may abate or become defective (Coop. Eq. Pl. pp. 63, 64, 76, 77, c. 1, § 4; 1 Cooke, Bank. Laws, 4th Ed., p. 558, c. 14, § 3; Williams v. Kinder, 4 Ves. 387); though it would, or might be different in the case of derivative titles under the defendant, pendente lite (Bishop of Winchester v. Paine, 11 Ves. 194; Metcalfe v. Pulvertoft, 2 Ves. & B. 200). But the nature of an abatement in equity seems to have been misunderstood at the argument. It is not, necessarily, a destruction of the suit, like an abatement at law, where a judgment, quod cassetur, is entered. It is merely an interruption to the suit, suspending its progress, until the new parties are brought before the court; and if this is not done at a proper time, the court will dismiss the suit. Coop. Eq. Pl. pp. 63, 64, 74–77, c. 1, § 4; Brown v. Higden, 1 Atk. 291; Williams v. Kinder, 4 Ves. 387; 1 Hov. Supp. p. 344, note to case, 4 Ves. 387; Anon., 1 Atk. 89; Id., 263, and note of Sanders. But in any case of a purchase, or transfer of interest, pendente lite, the proper parties may be brought before the court. Coop. Eq. Pl. pp.

76, 77, c. 1, § 4; Merywether v. Mellish, 13 Ves. 161. So that the question is brought to this, whether the present cause shall stand over for the purpose of allowing a supplemental bill to be filed by or against the purchasers. If the plaintiff has any interest remaining in the suit, or is a proper party in equity to give effect to any decree in the premises, affecting the purchasers, I am clearly of opinion, that this should be done to save expense and further litigation. And upon looking at the bill, I do not well see, how it can be doubted, that the plaintiff is a necessary party, since he has a residuary interest in settling the partnership concerns under either aspect of the bill. So far as the bill goes for a specific performance, the title of the purchasers of the real estate is, or may be materially concerned; for it may be made valid, or otherwise, at least as to some of the purchasers, according to the event of the suit. And, so far as it regards the other point, of the real estate being subject to partnership debts, they are all interested in the ultimate settlement of the accounts, and the ascertainment of the amount of the charges, if any, of the partnership debts on the real estate. How is an account to be taken, unless both partners are brought before the court? And how can the plaintiff make good his conveyance to the purchasers under him, unless he can procure a decree for a specific performance, or some other equivalent relief? I think, therefore, he is a proper and a necessary party in the future progress of the cause. But, as an expression of opinion on the other points of the cause, or at least on one of them, may save much future litigation, and as they have been fully argued, I purpose to consider, in the next place, the point last argued; and that is, whether the real estate is to be deemed partnership property; and if it is, whether it is chargeable in the hands of the defendants, who are purchasers, with the partnership debts. It is certainly matter of regret, that the bill intending to raise these questions is not framed with entire exactness or precision. The bill does not pointedly allege, that the real estate in controversy was purchased with the company funds for the company, and for their use, and on their account. The allegation is much more loose and inartificial. It states, that "the aforesaid lots of land and other property constituted the bulk of the property of said company; that the same was purchased and paid for principally by the joint funds of the company," (not saying exclusively for the company's use or on their account,) "occupied, used, and improved," (that is, in point of fact, and subsequently, occupied, used, and improved) "for the benefit of the company, and not for the sole and individual benefit of either of said partners;" all of which statements may be true, and yet the property not have been purchased on the company's account, as company property. Then, again, as to the charge against the

purchasers, (the Carrs,) it is not alleged, that they, at the time of their purchase, had notice, that the real estate was company property, liable, as such, to be charged with the company debts; but the allegations on this head mainly point to notice of the contract of sale, and its incidents. So that, in both respects, there is a defectiveness of allegation, which requires amendment, (though the charges may be met in their broadest sense and inferences, by the answers,) before the court can properly make a decree.

Some things may in the present discussion be assumed as settled, because, both upon principle and authority, they may now be treated as reasonably free from doubt. In the first place, property purchased with partnership funds does not of necessity become partnership property, if that is not the intention of the parties; at least, in all cases steering wide of fraud and breach of trust. See Ex parte Emly, 1 Rose, 64. One partner may certainly withdraw a part of the partnership funds for a separate purchase on his own account; and all may join in a purchase of real estate, for purposes wholly independent of the partnership, intending to hold their shares severally on their individual account. And the fact, under such circumstances, that the payment is made from the partnership funds, will not change the nature or operation of the purchase. It will take effect, as the parties intend. See Gow, Partn. c. 2, § 1; Id., c. 5, § 2; Smith v. Smith, 5 Ves. 189. But the circumstance, that the payment has been made out of the partnership funds, especially if the property purchased be necessary for the ordinary operations of the partnership business, and be actually so employed, will afford a very cogent presumption, that it was intended to be held as partnership property; and in the absence of all countervailing circumstances, it will be absolutely decisive. See Gow, Partn. pp. 48–50, c. 2, § 1; Id., p. 286, c. 5, § 2, etc.; Thornton v. Dixon, 3 Brown, Ch. 199; Crawshay v. Maule, 1 Swanst. 508, 521; Smith v. Smith, 5 Ves. 189; Forster v. Hale, 3 Ves. 696, 5 Ves. 308; Featherstonhaugh v. Fenwick, 17 Ves. 298; Mont. Partn. p. 97, note; McDermot v. Laurence, 7 Serg. & R. 438. We shall presently see the application of this doctrine to the facts of the case before the court, and how far it is modified by the statute law of Rhode Island. In the next place, upon a dissolution of partnership, each partner has a lien upon the partnership effects, as well for his indemnity against the joint debts, as for his proportion of the surplus. Gow, Partn. p. 333, c. 5, § 3; Harvey v. Crickett, 5 Maule & S. 336; Ex parte Rowlandson, 2 Ves. & B. 172. But the creditors of the partnership, as such, have no lien upon the partnership effects for their debts. Their equity has been truly said to be the equity of the partners, and is to be worked out through the rights of the latter. The creditors, therefore, are not necessary or proper parties generally in a bill between parties to wind up the partnership concerns; but they may, nevertheless, have indirectly the benefit of the proceedings under the bill, since a sale of the partnership effects, and a payment to them, is the ordinary result of the decree. This was strongly laid down by Lord Eldon in Ex parte Ruffin, 6 Ves. 119, where his lordship said, that joint creditors had no lien whatsoever upon the partnership effects. They had a power of suing, and, by process, of creating a demand, that would directly attach upon the partnership effects. But they had no lien upon, or interest in them, in point of law or equity. But, when the partnership is dissolved, the partners have a right to have the business wound up; and, to wind it up, it is indispensable that the debts should be paid, and the surplus be distributed in proportion to the different interests. In all such cases, the equity is not the equity of the joint creditors, but that of the partners with regard to each other, which operates to the payment of the partnership debts. The same doctrine was acted upon in Ex parte Williams, 11 Ves. 3, Ex parte Kendall, 17 Ves. 514, and Ex parte Rowlandson, 2 Ves. & B. 172; and indeed is too firmly established to admit of a doubt.

In cases where the real estate is purchased for partnership purposes, and on partnership account, it is wholly immaterial in the view of a court of equity, in whose name or names the purchase is made, whether of one partner or all; whether in the name of a stranger, or of one of the firm. In either case, let the legal title be vested in whom it may, it is in equity deemed partnership property, and the partners are the cestuis que trust. A court of law may, nay, must view it, in general, only according to the legal title. And if the legal title is vested in one partner, a bona fide purchaser from him of the real estate, having no notice, either express or constructive, of its being partnership property, will be entitled to hold it free from any partnership claim. But if the purchaser has such notice, he is clearly bound by the trust, and takes the property cum onere, like every other purchaser of a trust estate. See Forde v. Herron, 4 Munf. 316; McDermot v. Laurence, 7 Serg. & R. 438. A question often arises, whether real estate, purchased for a partnership, is to be deemed for all purposes personal estate, like other effects. That it is so, as to the payment of the partnership debts, and adjustment of partnership rights, and winding up the partnership concerns, is clear, at least in the view of a court of equity. Ripley v. Waterworth, 7 Ves. 425, 434. But whether it becomes personal estate as between the executor or administrator of a deceased partner and his heir or devisee, is quite a different question, upon which learned judges have entertained opposite opinions. The whole doctrine, as between such claimants, must turn upon the presumed intention of the deceased partner;

whether, by leaving it in the state of being real property, he meant, as between his personal representatives and his heirs and devisees, that it should retain its true and original character; or whether, having appropriated it as partnership property, it should assume the artificial character belonging to the other personal funds of the firm. In Thornton v. Dixon, 3 Brown, Ch. 199, which was a question between the heirs and distributees, Lord Thurlow said, that he had always understood, that where partners bought land for the purpose of a partnership concern, it was to be considered as a part of the partnership funds, and consequently distributable as personal estate. But upon the cause coming on again, his lordship held, that the nature of the agreement between the partners in that particular case was not sufficient to vary the nature of the property; and, therefore, that after the dissolution, the property would result according to its respective nature, the real as real, and the personal as personal estate. That doctrine was followed by Sir William Grant, master of the rolls, in Bell v. Phyn, 7 Ves. 453, and Balmain v. Shore, 9 Ves. 500. But it has been repeatedly denied by Lord Eldon, who has held the opposite doctrine, that real estate purchased on the partnership account ought, on the death of one of the partners, to be held to be personal estate. Townsend v. Devaynes, Mont. Partn. in notes, p. 97; Crawshay v. Maule, 1 Swanst. 508, 523, 527; Selkrig v. Davies, 2 Dow, 242. In Coles v. Coles, 15 Johns. 159, the court seem to have adopted the doctrine of Lord Thurlow, though that case might have been disposed of upon its own peculiar circumstances, without any absolute expression of such an opinion. In McDermot v. Laurence, 7 Serg. & R. 438, the court held, that real estate used by the partnership for partnership purposes, but the conveyance being to them as tenants in common in fee, was, as between the creditors of the partnership and a mortgagee, without notice from one of the partners, to be deemed real estate, and liable, in the first instance, to the mortgagee's debt. The reasoning of the court admits, by a natural implication, (though not necessarily,) that if the property had been purchased out of the partnership funds, on account of the partnership, and the mortgagee had had notice, the decision might have been different. The case of Forde v. Herron, 4 Munf. 316, is to the same effect as McDermot v. Laurence. But Edgar v. Donnally, 2 Munf. 387, admits, that notice would have varied the result as to the mortgagee. Mr. Chancellor Kent, in his learned Commentaries, adopts the doctrine of these latter cases, admitting, that notice to the mortgagee would have affected him with a trust for the partnership. 3 Kent, Comm. 14–16. See, also, Hovenden's Supp. to Ves. Jr. note to case of Ripley v. Waterworth. The case of Goodwin v. Richardson, 11 Mass. 469, is much more difficult to dispose of upon the principles of any other case, decided either in England or America on this subject. In that case there was a mortgage to two partners for a partnership debt, and a foreclosure; and then one of the partners died; and the question was, whether the real estate after such foreclosure remained partnership property. The court seem to have held, that it did not so remain, but was by the foreclosure vested in the partners as tenants in common; and on the death of the partner was, as to his moiety, to be treated as his separate estate. It is, however, material to state, that the sole question submitted upon the statement of facts agreed by the parties was, whether the estate, after the death of the partner, would be deemed a joint tenancy (as mortgagees are held in Massachusetts to be joint tenants, notwithstanding the statute of 1785, c. 62. Appleton v. Boyd, 7 Mass. 131. And see, on this subject, Randall v. Phillips [Case No. 11,555]) or whether the foreclosure made them tenants in common. The latter was the opinion of the court. Now this was a decision upon a mere question at law upon the legal title. But in a court of equity it is impossible, (I think,) that the property should not have been deemed partnership property, and distributable accordingly among creditors, whether the partners held it at law in joint tenancy, or as tenants in common. The cases already cited are full to the point, and they have the unhesitating approbation of Mr. Chancellor Kent. 3 Kent, Comm. 14–16. So that the case in Massachusetts turns upon a mere point of local law, under a local statute, and does not dispose of the equities between the parties resulting from general principles.

The question, however, in the present case, is not, whether real estate, when it is partnership property, becomes, to all intents and purposes, in cases of intestacy and wills, personalty; but whether it is so treated in equity, as between the partners themselves and the creditors of the partnership. It seems, (as has been already stated,) to be the established doctrine of courts of equity, that it is to be treated as personalty, as between the partners and their creditors, in whosesoever name it may stand on the face of the conveyances. It has been supposed at the argument, that the circumstance, that a conveyance is taken to the partners as tenants in common in fee, varies or ought to vary the application of the general doctrine, and that, at all events, under such circumstances, it is inapplicable to titles of real estate in Rhode Island. One ground relied on is, that where on the face of the conveyance it is a tenancy in common, parol evidence, that it is partnership property, contradicts and controls the legal operation of the words of the deed. But this argument is not well founded. The evidence is not introduced to establish any fact inconsistent with the legal operation of the words of the deed; but

merely to ingraft a trust upon the legal estate. Indeed, partners in a legal sense are either tenants in common of the partnership property, or joint tenants without the benefit of survivorship, which is the nearest possible approach to a tenancy in common. The circumstance, that the conveyance is in the names of the parties, as tenants in common, may afford some presumption, in the absence of countervailing presumptions, that the conveyance is not designed to be on partnership account; but, per se, it is very slight, and never decisive. In some of the cases already cited the conveyance was to the partners, as tenants in common; Balmain. v. Shore, 9 Ves.. 500; Forde v. Herron, 4 Munf. 316; McDermot v. Laurence, 7 Serg. & R. 438; but that circumstance was not relied on as conclusive. Then again, it is said, that the statute of conveyances and the statute of frauds of Rhode Island contain no exception in favor of resulting trusts, (as the statute of frauds in England, and the corresponding statute of Massachusetts do,) and, therefore, such a trust cannot be varied by operation of law in favor of the partnership. But it does not appear to me, that the statutes of Rhode Island vary the common rule; for they respect trusts created by the acts of the parties, and not trusts created by operation of law. Dig. Rhode Island Laws, 1822, pp. 202, 366. See West v. Randall [Case No. 17,424]; Powell v. Monson & Brimfield Manuf'g Co. [Id. 11,-356]. My impression is, that the exception in the statute of frauds, in England and Massachusetts, as to resulting trusts, has been deemed merely affirmative of the general law, and not as creating a saving of resulting trusts, which would otherwise have been cut off, unless in writing. But it is the less necessary to decide this point absolutely on this naked ground; for if the property were purchased with partnership funds and for partnership purposes, and thus it became an executed contract between the partners, it would be a fraud upon the partnership, afterwards to appropriate it to the private use of either of the partners, without the assent of the others. See Forster v. Hale, 3 Ves. 696, 5 Ves. 308, 314. And purchasers claiming under him with notice would be in the same predicament as the partners so misapplying the funds. No one will doubt, that a partner cannot shelter himself, in a court of equity, from responsibility for a fraud, under cover of a statute to prevent frauds. That would be, (as has been often said,) to convert the very statute into an instrument of fraud. Whether the doctrine on this head has not been carried too far by courts of equity, is not now matter open for discussion: for the authorities are exceedingly cogent and pointed in its application. I agree to the doctrine asserted at the bar, that, to create a resulting trust, there must be an original agreement creating the trust at the time of the purchase,

or at least at the time when the contract for the purchase takes effect, and is executed by an appropriation of it as partnership property. And I further agree, that, as a general rule, a resulting trust cannot arise in contradiction to the terms of the deed. See West v. Randall [supra]; Powell v. Monson & Brimfield Manuf'g Co. [supra]; 3 Kent, Comm. 14–16. But it does not appear to me, that the resulting trust, asserted in the present case, is liable to any exception on either of these grounds. It neither contradicts the deed, nor has a commencement posterior to the partnership purchase and appropriation.

The question, then, is, whether there is sufficient evidence to establish, that the real estate in controversy in the present case is property belonging to the partnership, I do not say, at law, but in equity. In the first place, it is admitted, that the real estate was principally, if not altogether, purchased with the partnership funds. That is of itself a very strong circumstance; and, in the absence of all controlling circumstances, would be ordinarily decisive, to the extent. of the partnership investment. In the next place, it was property necessary for the business of the partnership, and was appropriated to the use and benefit of it, during the whole period of its existence. The cotton mill, and other factory establishments necessary for the business, were erected on it. I do not say, that the whole of the real estate was thus used; but a great portion of it, and that which was of chief value, (to wit, the lot on which the factory was erected,) was thus used, and indeed was indispensable for the manufacture of cotton. In the next place, recurring to the original articles of partnership, of January 8th, 1814, (which included four other persons, who have since withdrawn from it,) it is stipulated, that a capital stock should be raised of six thousand dollars. The real estate, (or the principal part,) had been antecedently, (in November, 1813,) purchased in the name of three of the partners for $1600, and a conveyance made to them "as tenants in common in equal proportion, their heirs and assigns for ever." The whole stock was divided into tenths, of which the new partners took four tenths, and received from the other three, on the same day, a conveyance of their shares accordingly in a three acre lot, parcel of the premises, on which stands the principal factory and improvements; and the conveyance stated, "the same being for the use of a mill or mills for spinning cotton." The articles of partnership further provide, that "the books shall be kept, and the business carried on, in the name of the original proprietor; this capital stock shall be together, as joint property (of) tenants in common; and no dividend struck, until there be a surplusage of money; thought by the company unnecessary to be kept any longer." The language is very inartificial and loose;

but it is apparent that the intention was, that the capital stock so raised should be exclusively held for partnership purposes, the partners all being tenants in common thereof, the business being carried on in the name of the original proprietor, that is, (I suppose,) of the original partners named in the deed. It seems, that the factory, mill-dam, and other improvements were erected after the purchase out of the partnership funds. In the next place, there is a total absence of any proof in the partnership books of any charges for the real estate against the several partners, as upon a purchase made on their separate and individual accounts. Under such circumstances it seems difficult to resist the conclusion, that the real estate was contemplated by the partners, as a part of their capital stock; and, as such, was governed by the express clause of the articles respecting the disposal of the joint stock.

Against these circumstances there does not seem to be any thing on the other side of very great weight and significancy. It is true, that all the answers assert, that the property, though purchased with partnership funds, was purchased for the partners, as tenants in common. But for this allegation the defendants, who are purchasers, do not pretend to rely on any facts within their own knowledge; but mainly on the purport of the language of the conveyance, and upon information from other collateral sources. Reynolds, (the partner,) does indeed positively assert, that the real estate was purchased and held by the plaintiff and himself, "as tenants in common, but not as copartners; and that the same never constituted any part of the copartnership stock." And he adds, "that the said lands were paid for out of the company property, each tenant in common being charged by the company with the amount paid for his half of said lands." But no such charge appears, (so far as the court has any means of knowledge,) in the company books; and therefore the answer is not in this respect sufficiently maintained by proof. The circumstance, that the deeds of conveyance are to the partners, as tenants in common, though certainly of some weight, is not sufficient to overturn the strong presumptions the other way. There are yet some collateral circumstances, which give great strength and cogency to the presumption, that the three acre lot, (on which the factory was erected,) was, from the time of the formation of the partnership in January, 1814, treated by all the partners as partnership property. In the deed of H. R. Greene, (one of the partners,) to the plaintiff and the defendant, Reynolds, of his one third of the joint purchase, he expressly bounds the thirty-seven acre lot on the three acre lot, as an abuttal. The language is, "until it comes to the lot, belonging to the West Greenwich Manufacturing Company," meaning the three acre lot. And again, in the deed of the defendant,

Reynolds, to the other defendants, the Carrs, conveying his share of the whole forty acres. the description concludes thus, "containing by estimation forty acres, be the same more or less, together with one undivided half part of one cotton factory, machinery therein, dams, flumes, trenches, waters, and water privileges, and apparatus to said factory belonging, with three dwelling-houses and other buildings thereon standing, being the same establishment heretofore owned by the West Greenwich Manufacturing Company." This language applies, indeed, to the whole forty acres; and it is still stronger as to the three acre lot, from its minute enumeration of the buildings and privileges thereon.

Upon the whole I cannot say, that I see any solid ground of doubt, that the three acre lot was, from the very commencement of the partnership, held and used by all the partners, and understood by them to be held and used, as company property, and part of the capital stock thereof. The evidence is less stringent as to the remaining thirty-seven acre lot, and slighter still as to the other lot, on which the picker-house stands. As to these last lots, I perceive no objection to refer it to a master to consider and report upon the facts, whether they were partnership property, or not, if either party should desire the inquiry to be made. The next question is, whether this real estate, so held on partnership account, is chargeable in the hands of the present purchasers with the payment of the partnership debts. That depends, in my judgment, wholly upon the point, whether they had actual or constructive notice at the time of their purchase, that it belonged to the partnership. If they had notice, it is so chargeable; if not, then they are exonerated to the extent of the purchase money already paid by them. I say, to that extent; for clearly, so far as the purchase money has not been paid, that is a substituted fund, chargeable in their hands with the same burdens as the real estate. See Potter v. Gardner, 12 Wheat. [25 U. S.] 498, 5 Pet. [30 U. S.] 718. It is admitted by the answers, that the purchase was made for $1,600, of which $200 have since been paid, and a note given for $1.400, upon which about $500 have been paid; so that there remain due of the purchase money about $900. No ground is stated, upon which this sum is exempted from a charge for the partnership debts. If this be so, then it is clear, that, if the proper parties are brought before the court, an account may be taken of the partnership funds, and a decree be had against the purchasers for such an amount as, with reference to the partnership debts, the purchase money is, ex aequo et bono, chargeable with. But the more important question is, whether the purchasers had not notice, actual or constructive, that the real estate was partnership property; for it is not material, whether they had notice of the existence of the partnership debts. They were

put upon inquiry of the latter fact, if they had knowledge of the former, and are bound to all the consequences; since they could take only such equity in the estate, as the partner, from whom they purchased, was entitled to. Now, it is not an insignificant circumstance, that one of the purchasers, (Nathan Carr,) is the son-in-law of the partner, Reynolds, and lives in the immediate neighborhood of the factory; and that the other purchaser, (Jesse Carr,) is the father of Nathan Carr. In the next place, it is admitted, by their answers, that the partnership was in fact, though not formally, dissolved before the purchase, and that the plaintiff (Hoxie) in March preceding the purchase, "took exclusive possession of the company's property, and excluded Reynolds from the same, and from the mill, in which he and his family had then before labored, and has ever since retained possession of the same against the consent of said Reynolds." And in regard to debts due by the partnership, their answers farther state, that they do not know the amount of the company property or debts; but that they have understood and believe, that, if the company concerns were justly settled, the company property would be more than sufficient to pay the company debts. So that they do not assert their ignorance, that there were at the time of their purchase any debts due by the partnership. Under such circumstances the fact, that one partner was in the exclusive possession, holding out the other, was of itself calculated to awaken suspicion, and some inquiry on the part of any diligent and watchful purchaser. In the next place, it is most material, that the very title deed, under which they claim, does (as has been already stated) refer to the estate as "being the same establishment heretofore owned by West Greenwich Manufacturing Company." If owned by them, the purchasers must or ought to have known, that without a joint conveyance, or release, from all the partners, no absolute title could be acquired by their grantor, Reynolds. They were put upon inquiry to ascertain, whether any such conveyance or release had been made; and they cannot now set up their ignorance of law to excuse their want of diligence. Upon the slightest inquiry they could not but have found out, that the company was greatly in debt; and that Hoxie claimed a right in the property, not merely as partner, but under a contract of purchase previously made by him with Reynolds, for the purpose of liquidating the company debts. In the next place, I think it sufficiently appears from the testimony and other evidence in the case. that the partnership was largely indebted at the time of the dissolution; and that it had been notoriously straitened, if not embarrassed, in its circumstances before the purchase by the Carrs. And it is incredible, that the fact should not

have come to their knowledge, considering their local residence and connexion with the parties. I do not advert to the testimony respecting the supposed contract between the plaintiff (Hoxie) and the defendant (Reynolds); though if notice of that contract could be brought home to the Carrs, it would be conclusive upon the very point now under consideration. I mean, in relation to the embarrassments of the company, and the necessity of applying the real estate, as an appropriate fund, to discharge the partnership debts. But in the view, which I have taken of this case, it is wholly unnecessary to go into the consideration of the matter of the contract; since, with reference to the other point of partnership, there seems a clear ground of equity, upon which the court ought to retain the bill, and, if the proper parties can be brought before it, to proceed to farther inquiries, and a farther decree.