S. D. DILWORTH, Admr. &c. *v.* ISAAC MAYFIELD.

1. PARTNERSHIP: WHEN LAND HELD IN PARTNERSHIP IS REAL ESTATE.—If the scope and object of a partnership be the acquisition only of land, and not its subsequent disposition, or use as partnership stock, the land acquired by the firm will be considered real estate, which, upon the death of one of the partners, will go to his heirs and not to his administrator.

2. CHANCERY: PARTIES: PARTNERSHIP.—Both the administrator and the heirs of a deceased member of a partnership, formed for the acquisition of lands, and not for a subsequent sale or disposition of them as stock in trade, are necessary parties defendant to a bill filed by the survivor, seeking an account of the partnership, and to enforce his lien on the lands for the amount due him, and to charge the personal estate of the deceased partner for any balance that might remain after exhausting the partnership lands.

3. PARTNERSHIP: LIEN OF A PARTNER ON FIRM ASSETS.—Each partner has a specific lien on all the partnership property, both real and personal, for any balance that may be due him on a settlement of the partnership accounts.

4. HIGH COURT: DECREE NOT REVERSED FOR ERROR NOT PREJUDICIAL TO APPELLANT. This court will not reverse a decree of the chancellor for an error therein not prejudicial to the appellant.

APPEAL from the Chancery Court of Monroe county. Hon. Joel M. Acker, chancellor.

The appellee, Isaac Mayfield, filed his bill in the court below against S. D. Dilworth, the appellant, as administrator of Richard Dilworth, and also against the heirs of said intestate. The bill charges that in March, 1844, the complainant " entered into a co-partnership with said Richard Dilworth for the purchase of lands sold for taxes at public sale, according to law, and by the terms of said partnership, each member was to furnish one half the money for the purchase of the lands; and the losses and expenses were to be equally borne by each, and profits equally divided." That in

pursuance of said agreement, complainant and said Dilworth, in March, 1844, purchased at tax sale, certain lands, which are described in this bill; that complainant paid for the purchase-money of said lands, deeds, costs of sale, &c., $139 85; and took deeds from said tax collector in the joint names of Dilworth and complainant; that Dilworth did not advance any of the purchase-money, but the complainant paid the whole of it at Dilworth's request, and upon his promise to refund; that a portion of said lands had been redeemed, and that Dilworth had received all the redemption-money; that Dilworth received from A. V. Brown $120, and from D. W. Raysdale $25, for the redemption of a portion of the land bought by the firm; and that the rest and residue of the lands still belong to the firm; that complainant paid out of his private funds the taxes on said lands accruing since 1844, amounting to $200.

The prayer is, that an account be stated between complainant and the administrator of said Richard, of all the partnership dealings; that the lands belonging to the partnership and unredeemed, be sold, and the proceeds be paid to complainant, on the amount due him by said firm; that his lien, as a partner, for the said debt be enforced; and that said administrator be directed to pay him any balance that may remain after the sale of said lands.

The record states that the bill was filed "on the      day of 185 ." The subpœna was issued 10th March, 1856.

The administrator filed a separate demurrer to the bill, which was overruled.

The administrator answered, denying knowledge of all the matters charged in the bill in relation to the partnership, and the dealings under it; except, that he remembered, many years ago, of having heard the intestate say that he had received a sum of money (amount not now recollected) from Gov. A. V. Brown, for redemption of lands bought by intestate and complainant at a tax sale. The administrator also relies upon the Statute of Limitations.

The heirs of Dilworth failed to answer, and a *pro confesso* was taken as to them.

T. W. Williams, for complainant, stated that complainant and Richard Dilworth both had informed him, that they had purchased certain lands sold for taxes in 1844, on joint account; among the lands they said they had bought, was one tract belonging to A.

Woods, another to Governor A. V. Brown; does not know who paid the purchase-money; remembers that A. Wood paid, through witness, $100 to Dilworth as the redemption price of his land.

James J. Standifer, for complainant: witness was sheriff and tax-collector of Monroe county, in 1844; witness was offering lands at tax-sale, and bidders seemed to be scarce, and witness proposed to Richard Dilworth and Mayfield that they should buy; they replied that they had no money; witness proposed to advance the money; "they then jointly agreed to purchase lands, and did purchase certain lands jointly;" Mayfield paid witness the purchase-money for all the lands bought; Gov. Brown redeemed a portion of the lands bought by them, and Dilworth got the money; thinks the amount was about $120; a short time before Dilworth's death, he told witness that he had received the redemption-money of the Brown, Wood, and Raysdale tracts bought by him and Mayfield in partnership, and that he wanted witness and Mayfield to meet him and make a settlement between M. and D. "in their purchase of partnership lands, purchased at tax-sale," and that he wanted to pay Mayfield his part of said redemption-money.

This was all the proof. A commission was appointed to state an account, who reported a balance in favor of complainant of $393. This report was confirmed, and a final decree rendered, ordering a sale of the partnership lands, and appropriating the proceeds, 1st, to the cost of this suit; 2d, to the payment of the amount due complainant; and 3d, if any surplus should remain, then dividing it equally between complainant and the administrator of Dilworth. It was further ordered, that if the proceeds of the sale should be insufficient to pay the amount due complainant, that the administrator of Dilworth, should pay the balance out of the assets of his intestate.

From this decree the administrator appealed.

*Sale* and *Phelan*, for appellants.

I. This was a bill by Mayfield against Dilworth, as administrator of Richard Dilworth and the other defendants as his heirs, alleging some kind of a partnership between himself and the said Richard in reference to the purchase of lands. There was a demurrer to the bill, which was overruled. The causes of demurrer involve the

principles in reference to the purchase of lands in partnership, as connected with the rights and liabilities of the heirs and personal representatives of a deceased partner respectively, with regard to such lands. There may be a joint purchase of lands, by which the purchasers become merely joint tenants. There may be a joint purchase merely for division. There may be a joint purchase as partners, such partnership merely extending to the purchasing of lands, and only the losses or profits being divisible as common stock. There may be joint purchases, in partnership, under which the lands themselves in equity are regarded as personalty. The rights and liabilities of the heir and administrator are determined by the nature of the agreement between the purchasers, and are totally different under different agreements or purchases. If the joint purchasers merely become joint tenants—or if they purchased lands only to divide them—or if a partnership extended only to the losses or profits, and not to the land itself, the administrator, as such, has no interest in the land. On the other hand, if, by the terms of the partnership, the land was to be employed in the trade and business of the firm, as part of its stock, to be resold and reconverted into money, then it becomes, in equity, strictly personalty, and the heir has no interest in it. On the death of a partner under such partnership, neither heir nor administrator is immediately invested with any right to act in relation to such lands. They belong, like any other personalty, to the surviving partner; and it is only on a final settlement between the administrator and the surviving partner, that the interest of the deceased partner can be adjusted. These are plain principles. In any bill, therefore, filed by a surviving partner, in reference to such lands, it is almost, if not quite impossible that both administrator and heir can be necessary parties. And under those agreements by which such lands are regarded as personalty, it is impossible, as it would be improper, for any such bill as the one in this case to be entertained.

When the lands, under the joint purchase, do not become personalty, some proceeding, solely with a view to division, could alone be instituted by either heir or surviving partner against the other. When the land does become personalty, the surviving partner has the right to act, in reference to the same, regardless of the heir or administrator, in settling the affairs of the firm, by paying the debts

with the said lands, or in indemnifying himself from said lands, any balance that may be due him. In the absence of some most special and novel allegation, therefore, it is apparent that a bill filed against heir and administrator, in regard to partnership lands, must be demurrable. There is no such allegation in this bill, relieving it from the application of these rules; but, on the contrary, its allegations give peculiar directness to their force. If such are the various rights which arise under joint purchases or partnerships, in regard to lands, a bill setting forth the agreement under which they were made by the surviving, in conjunction with the deceased purchaser or partner, should do so with the most practicable certainty. One cause of demurrer was the uncertainty of the allegations of the bill on this point. It neither declares that the lands were purchased for division, nor that they were purchased in partnership, to be resold or otherwise disposed of as personalty. Either one or the other may be inferred. It says, "By the terms of said partnership, each member was to furnish half the money for the purchase of the lands; the losses and expenses were to be equally borne by each, and the profits equally divided." This is the solitary allegation on the point. We said, that a partnership could exist for the purchase of lands, the partnership extending to "purchasing" only; the "profits and loss" only, being "divisible as stock." See Collyer on Part. (Perkins's ed. 1848) § 51 and note; 3 Sumner, 435; 4 Mass. 424; Story on Part. §§ 82, 83; 21 Maine, 421–22. The allegation that the lands were purchased in partnership, without directly saying whether for division or to be regarded as personalty, cannot be made certain and definite, by the indefinite allegation that the losses and profits were to be divided. There is no allegation as to how these losses might occur, or those profits be made; and both might happen without regarding the land so purchased as personalty. The partnership was to "purchase lands sold for taxes." The losses might occur by the taxes having been paid before sale on the land purchased, and the profits made by land redeemed after purchase, without reference to how the land was to be regarded, should neither of the supposed contingencies happen. The land was jointly purchased: if the money advanced should be lost, it was to be divided; should the land be redeemed, the amount of redemption-money above the advance was to be

divided as profits. But should the land be gained by them, because the taxes had not been previously paid, or subsequently refunded, they were joint tenants, between whom the lands were to be divided, after the time for redemption had passed. This was the real intention of the parties, and it is altogether consistent with the allegations of the bill. To infer that a partnership for the purchase and resale of lands sold for taxes, as personalty, existed under the allegations of the bill, is a forced absurdity. The want of certainty as to the terms of the contract, without reference to parties, was sufficient to dismiss the bill.

But now admit that the allegations show a contract, which made the lands either personalty, or left them to be regarded as real estate, and there was a misjoinder of parties. 3 How. 258, of case; 4 Ib. 38, of case; 13 S. & M. 293.

Again : the prayer of the bill is as anomalous as its allegations. It asks nothing against the heirs, but prays an account against the administrator, of all the partnership dealings; that the land unsold may be sold, and the proceeds paid to complainant; and that the administrator pay him the residue of the debt, if any. This is, if anything, a bill for a final settlement of a partnership in lands, in which the heirs are made parties, without any allegation that they ever had any interest in the lands, or if they have, without any prayer that the same may be divested out of them, and that the balance, if any, may be paid by the administrator—a matter over which they have no control, which is the administrator's peculiar business, for which they hold him responsible. Yet they are parties to this suit; and be the balance against the administrator, on settlement by the administrator, what it may, they are forever barred from contesting it. It was done in a record not to be impeached, to which they were parties. 7 How. 437; 1 Lomax Dig. 85, § 15; 4 Kent, 49, 50; Collyer on Part. (Perkins's ed.) § 133, note 1; 5 Metcalf, 562; 1 Am. Lead. Cases, 501, and cases cited.

Again : as it rather appears that the said lands were bought for division, admitting the advance alleged to have been made by plaintiff, and the payment charged to have been to the deceased partner, as joint tenants, the complainant's remedy for money paid, and for money received to his use, was ample at law.

The action, as between joint tenants, is expressly given. Hutch. Code, 801, Art. 2.

II. The proof is as uncertain as the allegations, as to the stipulations of the contract of partnership, and is utterly insufficient to sustain the bill. Only two witnesses were examined. Williams only knows of the passing of certain money. "He knows nothing of any partnership." Standifer, the sheriff, at whose instance and from whom the purchase was made, and who was certainly willing to testify all he could for Mayfield, states a few simple facts, utterly inconsistent with such a partnership as that alleged in the bill. "He was selling for taxes. Bidders were scarce. He proposed to Dilworth and Mayfield to buy. He advanced them the money. They then agreed jointly to purchase lands, and did purchase lands;" and this "was all the partnership he knew anything about." He heard the agreement, and says it was "agreed jointly to purchase lands." Admit the fact, and it makes no such agreement as alleged in the bill, which is a partnership to "purchase lands sold for taxes, and to divide the losses and share the profits," a stipulation without which no partnership can exist.

Again: the administrator pleads the Statute of Limitations, which the plaintiff's own proof fully sustains. The main items are in 1844, and the interest is larger than the principal. The other items are in 1850, and amount to about the amount of the principal. The bill was filed November 1st, 1856.

The interlocutory and final decrees are all consistent with the indefinite character of the bill, and blending together all sorts of principles as applicable to real and personal property. We beg leave to refer to them without further argument.

*Yergers* and *Anderson,* for appellees.

I. The evidence clearly shows that there was an agreement for a communion of profits in the lands, and this is the most material consideration, in showing a partnership. The action of Dilworth himself shows that the profits were intended to be mutually shared; for he admits that he received the purchase-money for the redemption of certain of the lands described, and told one of the witnesses that he desired to pay his part to Mayfield. Collyer on Part. § 135.

This clearly evinces a communion of profits; and a communion of profits generally · implies a communion of losses. Story on Part. § 55.

The proof clearly shows a common business and common profits arising from the fund; this shows partnership property. 1 Parsons on Cont. 132–137.

And in the absence of specific stipulations, the presumption of law is, that the partners share the profits equally. 1 Parsons on Cont. · 133.

An attempt is made by the counsel for appellant to cast a cloud of doubts as to the meaning of the allegations of the bill. They suggest that the case made by the bill would not show that the appellant and appellee were partners, but possibly tenants in common, or joint tenants.

This confusion, we think, arises on their part by confounding · legal with equitable principles, in relation to partnerships.

At law, it is true, that real estate owned by a partnership, is held subject in all respects to the ordinary incidents of land held in common. See *Coles* v. *Coles,* 15 Johnson, 159; 3 Howard, 360.

But in equity, real estate used and applied for partnership purposes, and considered by the partners as partnership stock, is among themselves, until the affairs of the partnership are finally wound up, considered as a trust estate for the benefit of the partnership. *Howard* v. *Priest,* 5 Metcalf, 582; *Burnside* v. *Merrick,* 4 Ib. 537, 541; *Lawrence* v. *Taylor,* 5 Hill, 108, 111; *Hoxie* v. *Carr,* 1 Sumner, 185; *Sigourney* v. *Mann,* 7 Conn. 11, 19. Hence the great mystery thrown about the character of the bill may be dissipated.

II. But it is said that the bill prays for an account against the administrator alone, and not against him conjointly with the heirs.

We think this was correct; the bill prays that the lands may be sold, which have not already been sold by the partnership.

But, suppose we are not correct in this position.

We contend that until the affairs of the partnership are finally wound up and adjusted, that the lands are considered as personalty, and, therefore, a prayer against the administrator alone for an account, would be proper.

Real estate is, for all purposes, deemed partnership property,

and personal estate, as to the payment of partnership debts, the adjustment of partnership rights, and winding up the partnership concerns, at least in a court of equity. *Hoxie* v. *Carr*, 1 Sumner, 183 ; *Buchan* v. *Sumner*, 2 Barb: Ch. 198-9 ; *Thayer* v. *Lane*, Walk. Ch. 203 ; Story on Partnership, § 93 ; 2 Story Eq. § 1208 ; *Dyer* v. *Clark*, 5 Metcalf, 562.

But whether it becomes personal estate, as between the administrator of the deceased partner and his heirs or devisees, is an entirely different question. In a case of that kind, it seems to depend upon the intention of the deceased partner to convert it into personalty. *Hoxie* v. *Carr*, 1 Sumner, 183 ; *Buchan* v. *Sumner*, 2 Barb. Ch. 198 ; 3 Kent. 14, 15, and above authorities. As between themselves, partnership property is always deemed personalty, but it would seem to rest upon the intention to convert, either express or implied.

III. But, it may be said that if this be true, that it was improper to make the heirs parties ; that there was a misjoinder as to them, and that the demurrer to this effect should be sustained. In the first place, it is sometimes unnecessary to make certain persons parties ; but, if they are so made, and do have an interest in the subject-matter of the suit, the court will not sustain a demurrer for misjoinder. We think this a case of that nature.

But, under the circumstances of the case, this objection, if it be one, cannot be made available. The heirs themselves never demurred, the administrator only demurred.

If the misjoinder is of parties as defendants, those only can demur who are improperly joined. Story Eq. Plead. 237, 544 ; and it is doubtful whether in any case, the misjoinder of defendants is demurrable. *Pringle* v. *Crooks*, 3 Younge & Coll. 666.

IV. Again, it may be laid down as a general rule, that each of the partners have a specific lien on the partnership stock, not only for the amount of his share, but for moneys advanced by him beyond that amount for the use of the partnership. Collyer on Partnership, § 125 ; 5 Metcalf, 562 ; 4 McLean, 15.

V. Appellants faintly rely upon the Statute of Limitations.

They cannot avail themselves of it.

The filing of the bill is the commencement of a suit in chancery. 23 Miss. 60.

It does not appear from this record when the bill was filed, and, therefore, there is no way to ascertain the fact.

But, again, the statute does not run against partners, and, as the partnership, as to the partners themselves, is considered as still in existence until the final adjustment of the partnership accounts, it would appear that the statute should not run until that time. See 27 Miss. 106, and authorities before cited.

For other reasons, certainly not before the death of the party, or before the account could be taken and balance struck.

VI. By an interlocutory decree, the clerk and master was appointed a commissioner to take an account of the partnership dealings, and had power, and was authorized to send for persons and papers, take testimony, and examine the parties on oath, if necessary.

The commissioner made a report, finding the sum of $393 31, as due by the partnership to the complainant Mayfield.

No objection was made by the appellant to the allowance of any items of that account. See final decree.

No objection, therefore, can be made in this court to that account; it must be presumed to have been correct. *Dubourg de St. Colombe* v. *United States*, 7 Peters. 625; *Mott* v. *Harrington*, 15 Verm. 185.

The items should have been excepted to before the master, or they will be considered as waived. 1 Paige, 145; 3 John. Ch. 77; Minor, 35; 1 Washington, 224; 1 Littell, 187.

There was no exceptions in this case.

But even if some of the items were improperly allowed by the master, a general exception to the report will be overruled, if some are properly allowed. *Buloid* v. *Miller*, 4 Paige, 473; *Noble* v. *Wilson*, 1 Paige, Ch. 164.

The court are not presumed to know that any are incorrect unless specially pointed out. 2 Edw. Ch. 581; 13 Peters, 359; 2 Sumner, 108; 1 Paige Ch. 164.

But in this case there was neither a general or special exception. It conclusively follows, therefore, at least after the confirmation of the report and final decree, that the various items are true, and admitted to be so by the appellant.

But, in the second place, without reference to the account taken before the commissioner, and the evidence as before him, the proof otherwise shows the justice of the various items of account.

In the third place, the answer does not specifically controvert the allegations of the bill on this score; it denies a partnership in the most general terms; the partnership is fully proved. Not having specifically answered, we think, under our new code, the facts alleged are taken as admitted on this score. The answer must answer fully. Revised Code, 547; 3 Madd. Ch. R. 72; 2 Sim. & Stuart, 235; 6 Simonds, 356; Mitford Pl. 307, Note (h) and cases; 1 Keen. 87.

The new code applicable on this point. See *State* v. *Commercial Bank of Manchester* (Opinion Book), 4 George, 474.

HANDY, J., delivered the opinion of the court.

This bill is filed by the appellee against the appellant, as administrator of Richard Dilworth, deceased, for a partnership account, and to subject certain lands therein specified to the payment of such balance as may be found to be due the appellee thereon.

The bill charges that appellee and said decedent entered into partnership in the purchase of tax lands sold at public sale; that each was to furnish an equal amount of cash, and the losses, expenses, and profits were to be equally borne and divided; that appellee paid all the money for the purchase of the particular lands mentioned, while appellant's intestate not only paid no money, but received a considerable sum arising from the redemption of the lands by the original owner; that titles to the lands on said purchase were taken in their joint names; that some of said lands are yet unsold or unredeemed, and still belong to said firm; that Mayfield, the appellee, has paid about $200 for taxes on said lands, besides the $189 85 originally advanced in their purchase.

The heirs-at-law and the administrator are all made parties defendants; prayer for an account of the partnership business; that the unsold lands may be sold; the amount due appellee paid out of the sale as a lien on the lands; and that the administrator be decreed to pay the balance, and for general relief.

To this bill the administrator filed his separate demurrer, which was overruled; appellant Dilworth, the administrator, answered; proof was taken, and decree for complainant, upon report of commission ascertaining the amount due; and from this decree an appeal is prosecuted.

There are assigned for error the following causes:—

1. The decree overruling the demurrer to the bill.
2. The insufficiency of the proof to sustain the bill.
3. The Statute of Limitations, established by the proof.

The first error assigned, is designed to reach a misjoinder of parties, which it is argued exists in this bill; that the administrator and heirs cannot be both proper parties; that the land sought to be subjected is to be regarded, either as real estate, descending to the heirs, in which event it does not appear that the administrator has any necessary connection with this litigation; or else it is to be regarded as personalty, as between the partners, in which the administrator is interested, and not the heirs, and in that event the heirs are not proper parties.

The bill states a purchase by the parties as partners *without more*. There is no agreement stated, as to the mode of their disposition; there is no statement of the object of the partnership, beyond that it was "for the *purchase* of lands;" there is nothing on the face of the bill, tending to show that there was any agreement, or understanding, that the lands were purchased to be dealt with as partnership stock in trade, or that they should be sold at all. The bill only shows a partnership *for acquisition*. See *Brady* v. *Calhoun*, 1 Penn. R. 147; Collyer on Part. 47, § 51, note 5, and authorities cited. The case does not, therefore, fall within the rules of conversion, which have so long perplexed the profession. It comes most strictly within the rule laid down in *Wooldrige* v. *Wilkins*, 3 How. Miss. R. 372, that "when the articles of partnership do not provide that lands held by the partnership shall be sold, or otherwise manifest an intention to consider them a part of the effects used in trade, the heir is entitled to them." This being so, it is conceded, and such is the law, that the *heirs* are necessary parties to any judgment, or decree, intended to affect their interests in the land.

Is the administrator a proper party? is the next question for solution. It will be borne in mind, that this is a bill for *an account* of an alleged partnership dissolved by the death of one of the partners, a familiar head of original chancery jurisdiction. It seeks, first, a settlement and ascertainment of the *indebtedness* to the appellee, of the estate which this administrator represents; it next

seeks payment from him, out of the estate of his intestate, if that should be found sufficient, without resort to the lands of the heir; and it lastly seeks, on failure of this source of payment, to subject the partnership *land* to his equitable lien for advancements, and for moneys abstracted or appropriated by his copartner, beyond the amount of his share. This *specific lien* he is entitled to enforce in a court of equity. Collyer on Partnership, § 125, and numerous authorities cited in note 1. The interests of the parties, administrator, and heirs, being thus blended in this litigation—the *administrator* charged with the duty of ascertaining and paying the debts of the estate, by law, for the benefit of creditors as well as heirs, and the only representative of the personal estate; and the *heirs* with a double interest, one represented by the administrator, the other only by themselves—it would seem essential that both should be joined as defendants to this bill.

It follows, therefore, that the demurrer on this ground was properly overruled.

It is next assigned, as ground of error, that the proof did not establish a *partnership*, according to the allegations of the bill, but only a joint tenancy.

We think the proof tended strongly, if not conclusively, to establish a partnership, to purchase land, at least; the " profits or loss being divisible as stock." The intestate in his lifetime, by the testimony of Standifer, admitted the partnership, and his liability to account, for sums he had received under it; and the other facts in the case are not inconsistent with this view. The title is taken in their names jointly, as partners usually do; and their acts tend, throughout, to establish this relation, to the extent already indicated, at least. We think, therefore, there was no defect in proof on this ground.

The plea of the Statute of Limitations is next relied on. The record does not enable us to determine this question. It does not appear when the bill was filed; the dates are left blank. This omission cannot be supplied by the date of the writ, as the *filing of the bill* is determined, by this court, to be the commencement of the suit as between the parties. *Bacon et al.* v. *Gardner et al.* 23 Miss. 60.

The last assignment of error is the decree of the court ordering

the sale of the land to satisfy appellee's lien; and should the land sell for a sum more than sufficient for such purpose, that such surplus shall be equally divided between the administrator and the complainant, or appellee; and should such sum be insufficient to satisfy appellee's claim, then, that execution may issue against the estate of said deceased, in the hands of said administrator.

This decree, so far as it directs the division of the proceeds of the sale of the land, after the payment of appellee's claim, between the administrator of the deceased partner and the appellee, is certainly erroneous. We have already seen that the land under this partnership, as stated in the bill and shown by the proof, was not held as stock in trade; it did not, therefore, become personalty, to be dealt with as such, vesting as personalty in the representative, on the death of the intestate, but retained its character as real estate, descending to the heirs. The heirs, therefore, and not the administrator, are entitled to the surplus; and the decree should have directed the division accordingly. For this error, however, the decree will not be reversed, as the administrator is the only appellant, and the decree below is in his favor.

Let the judgment be affirmed.