## DOUGLAS PUTNAM, Executor, etc.

### *v.*

## THOMAS S. DOBBINS et al.

1. CONVEYANCES—*partnership interests in real estate.* Two partners, holding unequal interests, having to foreclose a mortgage upon real estate taken

to indemnify themselves against a certain securityship, bid in the property, and the land was conveyed to them jointly, without designating their respective interests. *Held*, that each took a moiety of the legal title, but, in equity, would hold according to their respective interests as partners.

2. SAME—*what shall pass thereby.* A conveyance by the executor of the partner holding the greater interest, under a power given by will, of " all the right, title and interest which the testator had at the time of his decease," would pass to the grantor the legal title to one-half the land and the equitable title to the additional interest held by the testator.

3. VENDOR'S LIEN—*when it exists.* If the purchase money of the interest to which such grantee held the equitable title only, remained unpaid, that interest would be subject to the ordinary vendor's lien, while vested in him or in a purchaser with notice.

4. Should, however, the holder of the legal and equitable title thus obtained, convey his entire interest, as by deed purporting to convey the whole tract, such subsequent purchaser, not having notice of the non-payment of the purchase money for the equitable interest, would hold it discharged of the vendor's lien.

5. And the subsequent purchaser thus holding without notice, and therefore discharged of the vendor's lien, would afford protection to his grantee, even though the latter had notice, against the original vendor's lien for unpaid purchase money. An equity in that regard could not be worked out through an intermediate innocent holder against his grantee with notice.

6. OF AN EQUITABLE LIEN—*for unpaid purchase money, as distinguished from a technical vendor's lien.* Should the holder of the moiety of the legal title, with the additional equitable title, thus discharged of the technical vendor's lien, convey an *undivided half*, omitting to convey the additional interest to which he held the equitable title, and the purchaser of such undivided half should then obtain the outstanding legal title to the other moiety, even with notice that the last acquired moiety of the legal title was chargeable with the equitable title to a portion of it in the hands of his first vendor, he would hold the entire legal title not only discharged of the original vendor's lien for unpaid purchase money, but discharged also from any equitable claim in his favor in reference thereto.

7. TRUSTS—*when they arise.* The party thus holding the entire legal title, having acquired from his first vendor only the moiety of the legal title, not that portion to which he held an equitable title and which was embraced in the outstanding moiety of the legal title, might possibly, on acquiring such outstanding moiety of the legal title, no other equity intervening, be regarded as holding the portion to which his first vendor holds an equitable

title, in trust for him, but certainly not for the original vendor who had parted with his entire interest.

8. ESTOPPEL. If the holder of a moiety of the legal title, not knowing that he also holds an equitable title to an additional portion, conveys the undivided one-half, and the holder of the other moiety of the legal title, at the same time, conveys to the same grantee, the two grantors selling in concert, the owner of the equitable title can not afterwards assert it against his grantee.

WRIT OF ERROR to the Circuit Court of Peoria County; the Hon. MARION WILLIAMSON, Judge, presiding.

Douglas Putnam, as executor of the last will and testament of Levi Whipple, deceased, having sold and conveyed · the interest of his testator in certain real estate, and a part of the purchase money remaining unpaid, exhibited his bill in chancery against Dobbins, a remote grantee, to enforce his alleged vendor's lien. The circumstances connected with the asserted claim of the complainant are fully developed in the opinion of the court. On the hearing in the court below a decree was entered, dismissing the bill. The complainant thereupon sued out this writ of error.

Messrs. McCULLOCK and TAGGART, for the plaintiff in error.

Mr. A. McCOY, for the defendants in error.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

Levi Whipple and Edwin Putnam, both deceased, were formerly partners in business in the State of Ohio, Whipple having two-thirds interest in the business, and Putnam one-third. During the partnership they indorsed a note for one Burlingame, and, to secure themselves, took a mortgage on a lot in Peoria, in this State. Having been obliged to pay the note, they foreclosed the mortgage, bid in the property, and it was conveyed to them jointly, the Master's deed not specifying

their respective interests. Each, therefore, took a moiety of the legal title, but the proof shows, beyond all controversy, that in equity two-thirds belonged to Whipple. Whipple and Putnam both died, the former leaving Douglas Putnam, the complainant in this suit, as his executor. He employed an agent in Peoria to take charge of the lot in question, who, in 1854, negotiated a sale of the two-thirds interest to Whittemore, one of the defendants. Before, however, the deed was executed by the executor, under a power in the will, it was discovered that Whipple had acquired the legal title to only one-half, and therefore Whittemore only paid for one-half, but he executed a written agreement binding himself to pay $350 with interest from April 1, 1854, as soon as the executor of Whipple should deliver him a deed conveying the legal title to the additional one-sixth, said legal title being in the Putnam heirs, but equitably belonging to the estate of Whipple. The deed from the executor conveyed all the " right, title and interest which Whipple had at the time of his decease." This deed made Whittemore the owner of the legal title to one-half, and of the equitable title to an additional sixth, the latter subject to the ordinary vendor's lien, while vested in him or in a purchaser with notice. On the 18th of June, 1855, Whittemore, for a consideration of $1600, conveyed to the defendant, Freeman, the entire lot, by deed with special covenants against all persons claiming under him. This deed vested Whittemore's legal title to one-half and equitable title to one-sixth in Freeman, discharged, however, of the vendor's lien for $350, unless Freeman was affected with notice, actual or constructive, a point to be hereafter considered. On the 29th of June, 1857, Freeman conveyed an *undivided half* of the lot to the defendant Dobbins, for a valuable consideration.

Let us now follow the other branch of the title. On the 26th June, 1856, the heirs at law of Putnam conveyed to one John King all the right, title, and interest of which said Putnam died seized in said lot, and on the 29th of June, 1857, King

conveyed to Dobbins an undivided half of said lot, by deed of general warranty.

This bill is filed by the executor of Whipple, claiming a vendor's lien to the extent of the $350, and it is insisted that if there is not a technical vendor's lien, it is only equitable that Dobbins should pay that sum, and the interest, to the estate of Whipple, the entire legal title having vested in him, and the estate not having received payment for the one-sixth equitable interest.    The Circuit Court on the final hearing dismissed the bill.

In support of the bill, it is urged that, when King took his deed from the heirs of Putnam, he had notice that, although the legal title to one-half was in them, yet equitably they only owned a third, and that when Dobbins bought of King, he also had notice that the heirs of Whipple claimed a larger interest than the heirs of Putnam, which fact should have put him upon inquiry.    If the deed from the executor of Whipple to Whittemore, instead of conveying "all the right, title, and interest which the said Levi Whipple had and held in and to said lot at the time of his decease," had only conveyed an undivided half, we should have little difficulty in adopting this view and decreeing Dobbins, who would then, as now, be seized of the legal title to the whole, to convey an undivided sixth to the heirs of Whipple.    But under the actual state of the conveyances, what right have we to touch Dobbins's title for the benefit of the estate of Whipple?    All of Whipple's interest in the lot, whether legal or equitable, passed by the deed from the executor of Whipple to Whittemore, and by the deed from Whittemore to Freeman.    As Freeman conveyed to Dobbins only an undivided half, but for the fact that other equities might intervene, possibly the former might have the latter declared a trustee for *his* benefit to the extent of one-sixth, but how the title is to be reached for the benefit of the Whipple estate we do not perceive.

The counsel for the appellant see this difficulty, and while admitting expressly that the entire interest, legal and equitable,

of Whipple went to Whittemore, and from Whittemore to Freeman, they contend that there was notice to Freeman, at the date of his purchase, of the arrangement between the executor of Whipple and Whittemore for the payment of the $350 by the latter for the outstanding sixth, as soon as the legal title could be made. If Freeman had such notice, the case would be free from difficulty, as Dobbins would hold a sixth in trust for Freeman, and Freeman would hold it in trust for the estate of Whipple, to the extent, at least, of the payment of the $350 and interest. But we have sought the record in vain for evidence of such notice. The instrument by which Whittemore agreed to pay the $350 was not recorded until long subsequent to the purchase by Freeman, and there is nothing in the record to show that he had actual notice at the date of his purchase. At best it would be mere conjecture.

The whole case, in our view, turns on the fact of notice to Freeman that part of the purchase money was still unpaid to the executor of Whipple, which fact the latter was bound to prove. We ought to presume that when Freeman paid Whittemore the $1600 for all his interest in the lot, the price was intended to cover, as well the equitable, as the legal interest. Assuming, as complainant's counsel do, and as the proof would indicate, that Freeman knew the Whipple estate had an interest beyond their legal title, he found that interest in Whittemore, and, so far as the record discloses, he had a right to believe it was paid for. It was conveyed to him, together with the legal title to the moiety, and it passed to him, purged of any equities that may have rested on it in the hands of Whittemore. If, the day after the conveyance to him, the executor of Whipple had become vested with the legal title to the one-sixth by a voluntary conveyance from the heirs of Putnam, chancery would have enjoined him from asserting such legal title to the prejudice of Freeman, however valid it might have been against Whittemore.

As Freeman and King both sold to Dobbins on the same day, each conveying, by deed of warranty, an undivided half,

and for the same consideration, it is probable that they sold in concert, and that Freeman claimed to own only one-half, having never been furnished with evidence that the Whipple estate owned more than a moiety. The testimony of Dobbins sustains this view, and if such was the fact, although Freeman, in fact, owned more than an undivided half, yet he would be estopped from setting up a claim against Dobbins. But although he may be in a position where he can not now assert a claim to the undivided sixth, yet it nevertheless did certainly pass from the estate of Whipple, through Whittemore into him, and in the absence of any evidence that he knew it was not paid for, we do not perceive how we can grant the complainant the specific relief asked, or work out an equity through Freeman against Dobbins, when the record discloses no equity in the complainant against Freeman himself. The complainant sold the legal title to one fraction and the equitable title to another. He received his payment for the first and took a contract of payment for the second. His purchaser sells to a third person without notice that the consideration is in part unpaid. The land has thus passed for all purposes beyond the reach of the complainant, and he must be left to the provisions of his contract. He can not ask that a legal title shall be held for his benefit, when he has allowed the equitable title to pass from him.

*Decree affirmed.*