Van Vorst, J.
A full consideration of the evidence justifies the conclusion, that the real estate occupied and enjoyed by the copartnership of West, Bradley & Carey, although taken and standing in the name of Joseph I. West, one of the 'partners, was in fact copartnership property. Copartnership funds had been used to pay for the same. All the expenses incident to its ownership, including annual taxes, charges for alterations, improvements and repairs, were paid with partnership moneys, and a large portion of the property was actually occupied by the firm in its business (Fairchild v. Fairchild, 64 N. Y. 471; Hoxie v. Carr, 1 Sumn. 173, 188).
It is true that the intentions of parties, at the time of the purchase and payment, is to be considered, but such intention must be derived from the conduct of the parties, and that leads to the conclusion that the property was purchased and held for the firm, and formed a part of its assets.
It is also true that the special partner, Mr. Henderson, objected to the holding of real estate by the firm, but it does not appear that the other partners were opposed to such use of the firm funds, and the objection of Mr. Henderson must be considered, in the light of all the facts, and the action of the partners, as not insisted upon, or as waived. There was no dissent from its appearing on the books of the concern under the appropriate head “Beal Estate,” where all entries affecting' it were made. It is also true that the mortgages were made by West, individually, but that fact is not sufficient to overcome the other facts, showing that the same was copartnership property, and represented moneys of the firm withdrawn to pay for it.
*279 The interest on these mortgages was paid by the firm, and was charged in the books in the real estate account.
If the payments had been made on account of West, they would have been charged against him. They were not so charged. And the firm, and not West, received the rents of such portions of the real estate as were not actually occupied by the firm, and, as it afterward appears, this real estate was in the end conveyed as copartnership property by the direction of the parties.
For the purpose of paying the debts of the firm, and adjusting and discharging the rights, equities and claims of the copartners, between themselves, real estate belonging to a copartnership is treated in equity as personal property.
And as between the parties to this action, the claim of the plaintiff, having arisen during the pendency of the copartnership, and before an adjustment of its affairs between themselves, the real estate must be considered as personal property.
■Beal estate purchased for partnership purposes is deemed personal property, although it stands in the name of one of the partners only (Hoxie v. Carr, supra; Galbraith v. Gedge, 16 B. M. 633). And the partner having title is a trustee for the firm—holding the property as personalty, and when the trust is-discharged by payment of debts, and the settlement of the claims of the partners as between themselves, the character of realty again revives (Buchan v. Sumner, 2 Barb. Ch. 165 ; Fairchild v. Fairchild, supra ; Collumb v. Read, 24 N. Y., 505).
Although Bradley, by the terms of the mortgage under consideration, undertook to mortgage all his right, title and interest, individually and as a member of the firm, in and to the real estate and other property of the firm, yet this mortgage in fact imposed no *280 actual lien upon the property of the firm. The corpus of the effects is joint property; and neither partner has separately anything in this corpus, but the interest of each is only his share of what remains, after the debts are paid, and the accounts taken (Menagh v. Whitwell, 52 N. Y. 146-158).
Purchasers of an invidual partner can only take his interest. That interest, and not a share of the partnership property, is sold, and that consists only of the share of the surplus, which shall remain after the payment of the debts and settlement of the accounts of the firm (Menagh v. Whitwell, supra; Morse v. Gleason, 64 N. Y. 204).
A mortgage made by a partner of his interest in real estate belonging to the copartnership, is not a mortgage of the property itself, nor of an undivided part thereof, but of his interest in the copartnership after its debts are paid, and the claims and liens of the partners as between themselves are adjusted.
It is not until that interest is ascertained definitely, and set apart as the share of the mortgagor, that the mortgage is available against any specific property.
The existence of this mortgage, although it had been known to the copartners of Bradley, could not have prevented the partners from disposing of this real estate to the legitimate purposes of the partnership.
In closing up the copartnership affairs, the partners had the legal right—the mortgagee could not have prevented it—if they deemed it proper to do so, to sell the real estate for money; and for this purpose they could have given a good title unaffected by the mortgage, of they could have exchanged it. for other available property; they could have done so for the purpose of conveniently adjusting their affairs with creditors and each other, and for the purpose of winding up their business.
*281 I do not understand that an individual partner can, for his own private advantage, enter into a separate arrangement with a stranger, which he studiously conceals from his associates, and in that unusual way so burden his share as to hamper and restrain the partnership from disposing of the joint property, and winding up the concern in a manner in which the rights of all the partners will be adequately protected.
The partnership of Wests, Bradley & Carey continued until the day fixed for its termination by its articles, and for some months afterwards. The copartners of Bradley being entirely ignorant of the existence of plaintiff’s mortgage.
The plaintiff, having given the partners of Bradley no notice of his claims, under the mortgage, placed them under no duty in any manner to guard them.
In February, 1868, the copartners amicably adjusted their affairs, and the value of the share of each of the partners in the assets and property, after an allowance for debts and liabilities of the firm, was ascertained.
The valuation of the property and the adjustment of the shares was concurred in by all who were concerned in those questions, the partners themselves.
Bradley’s share was ascertained to be of the value of $97,497.42.
A corporation was organized, in which Bradley and his copartners, with others, were concerned and interested, under the name of the West, Bradley and Carey Manufacturing Company, and all the property and assets of the late firm of West, Bradley & Carey, including its real estate, was purchased by and transferred to the corporation.' In payment for the shares of the copartners in the partnership assets, which was taken as a whole, the corporation issued to them shares of its capital stock, in amounts agreed upon at par. The special partner, Henderson, received the value of his share in the assets, in cash.
*282 No specific part of the partnership assets had been set aside to represent the share of Bradley; had that been done, it may be that the plaintiff’s mortgage would have bound it.
The adjustment of the partners determined only the value of his undivided share.
The power of the copartners to make the sale and transfer to the corporation, I do not think "can be questioned. The whole title to the property was in them, together with the right to dispose of the same, as they should deem best for the preservation of their interests. I am not sure that the plaintiff, had he attempted to do so, could have at the time interfered with such right of control and disposition by the copartners, of their property. But he did not interfere. In so far as his interest was concerned, I should say that Bradley represented him, and that he is concluded by his action. He suffered him, without any question, not only to take part in the adjustment of the respective interests, but in the disposition of the property itself.
The case of Kelly v. Hutton (3 L. R. Ch. App. 704), is an authority for the conclusion that Bradley must be taken, under the circumstances, to have acted as the plaintiff’s agent.
He received from the corporation the value of his share in its stock. The certificate for that stock was a distinct separation of his interest from that of his late copartners, and represented it, and to that the plaintiff’s mortgage attached in his hands, and could, by timely and appropriate action on the plaintiff’s part, have been satisfied therefrom.
I can discover nothing from anything yet appearing, which imposed upon the corporation, or the associates of Bradley in his late firm, any duty to see that he applied his shares of stock to the satisfaction of the plaintiff’s claim, or rendered them responsible for his *283 conduct with respect to the disposition of his shares. That was a matter between plaintiff and Bradley himself. But it is urged by the learned counsel for the plaintiff, that the record and filing of the mortgage, in October, 1867, some ten years previous, was constructive notice to the purchaser of the plaintiff’s claim, under the mortgage, and that the corporation purchasing was bound to make searches for incumbrances affecting Bradley’s interest before taking title, and that the purchaser took the property subject to the lien of plaintiff’s mortgage, and that the lien has not been discharged.
The conclusion has already been reached that the mortgage imposed no lien upon the corpus of the copartnership property. If that be true, the record and filing of the mortgage could not create a lien. These acts give notice of a lien already existing. It was this corpus of the copartnership property which was purchased by the corporation. The portion of it which was real property was, as already stated, converted into personalty for copartnership purposes. The conveyance of the realty was executed by the party in whom the legal title was vested, and that, under the case of Van Brunt v. Applegate (44 N. Y. 544), must be considered as vesting -a good title, unaffected by the equity of the copartners or others.
In that case the conveyance was made by one partner without the consent of the other partner, while the firm was insolvent, and for the purpose of giving a preference ; and yet the equities of the partner not consenting, and creditors, yielded to the conveyance of the legal title.
But was the recording the mortgage as an instrument affecting real estate a notice to the purchasing corporation %
“Every conveyance of real estate within this State ” is directed to be “ recorded in the proper office *284 in which the real estate is situated, and if not so recorded it is void as against certain persons” (1 R. S. 756, § 1).
The term “real estate,” as used in the statute, is construed as co-extensive in meaning with lands, tenements, and hereditaments, &c., &c. (1 R. S. 762, § 70).
The term “conveyance” embraces every instrument “by which any estate or interest in real estate is created, aliened, mortgaged or assigned, or by which the title to any real estate may be affected in law or equity ” (Id. § 72).
I do not think that the subject of the mortgage was real estate—it was Bradley’s interest in the copartnership property, the nature and extent of which has been already defined. Nor was the instrument itself a conveyance required to be recorded within the meaning of the recording acts, as it created no estate or interest in real estate, nor did it affect the title thereof.
I do not think it can be satisfactorily urged, that notwithstanding the existence of this mortgage the copartners could not have sold this real estate for a valuable consideration, and have received the avails of the sale to the use of the copartnership, and that the purchaser would have taken a good title unaffected by the mortgage.
Van Brunt v. Applegate, supra, I think disposes of that question. The rights, legal and equitable, of a non-consenting partner yielded to the conveyance of the legal title by his associates, and the most that the plaintiff acquired under his mortgage was the right and title of Bradley.
I am referred by the learned counsel of the plaintiff, to the case of Crane v. Turner (7 Hun, 357; S. C., on appeal, 67 N. Y. 437), as upholding the idef^that the recording of the mortgage was constructive notice to the purchaser. The decision of that case in the court of appeals rests upon a principle, which it has well es *285 tablished in several cases, and the justness of which cannot be questioned—that the assignee of a mortgage takes it subject to the equities attending its execution —he stands in the place of the mortgagee, and that as the mortgagee knew of the existence of the prior mortgage, his assignee was estopped from denying it.
The fact that the mortgagee had an equitable title only when the mortgage was, made, was not allowed to affect the decision of the case.
Miller, J., says: “ Even if the title was not the subject of a mortgage, the assignor who made it was estopped from denying its validity.”
Were it important to examine that case as to the question, whether the recording act applied to the mortgage of an equitable title to land, it could be clearly distinguished from the subject of the mortgage under consideration. In that case the mortgagor was va. possession of a piece of land in his own right under a contract, by the terms of which he was to succeed to the legal title, as he afterwards did.
That was in no true sense the attitude of Bradley to the real estate in question. He had no equitable title ; Ms right of possession he enjoyed only in common with Ms partners ; there was no understanding or agreement that he would be at any time entitled to the legal title, and he never succeeded to it.
For these reasons I conclude that the record of the mortgage was not constructive notice to the corporation purchasing the land.
Nor is the plaintiff’s case aided by the filing of the instrument as a chattel mortgage.
Bradley did not undertake to mortgage any specific “goods and chattels.” He had none to mortgage. He mortgaged Ms interest in the copartnership property. That is not a mortgage of goods and chattels. To render the filing of an instrument effective as a notice, it must be a mortgage of “goods and chattels” (2 R. S. *286 136, § 9 ; Wood v. Lester, 29 Barb. 145; Milleman v. Hecht, 20 Id. 37; Putnam v. Westcott, 19 Johns. 72).
The act of Bradley in making the mortgage, was, under the articles of partnership, outside of his powers. He was prohibited from entering into an engagement of the nature of the one under consideration, without the consent of his copartners.
The making of this mortgage was a breach of duty, of express obligation. His partners were not bound to suspect that he would violate his contract with them, or involve his interest by mortgage. They were not called upon under the articles of partnership to search the records, to ascertain whether he had broken faith with them, or whether equitable rights existed in others, through such action on his part. And, as to the purchasing corporation, it had notice that the legal title to the real property was in West; and whilst it was proper, in making its purchase, to search for incumbrances against those in whom the legal title stood, I do not think it- was called upon to search whether either partner had executed an instrument of the character of the one under consideration, prohibited by the copartnership agreement. Equitable considerations arising from the whole case, I apprehend, are greatly in the defendant’s favor.
The plaintiff never disclosed to the partners of Bradley the fact of this mortgage until the commencement of this suit. Once, shortly after the mortgage was executed, he visited the place of business of the partners, and was introduced to one of them, but after ■ examining the property he walked away, without disclosing the act of Bradley.
Before taking this mortgage, prudence, at least, would seem to indicate that he should have informed himself of Bradley’s power and duty under the copartnership articles, and I should conclude that he is “chargeable with all the facts which by inquiry he *287 could have ascertained ” (Stearns v. Gage, 6 Weekly Dig. 392, Mullir, J.).
He allowed Bradley, without any interference on his part, to participate in the affairs of the copartnership, and in winding it up, in disposing of the assets, and in receiving his share of the proceeds.
After a delay of ten years of inaction, Bradley in the meantime having parted with his stock in the corporation and become insolvent, plaintiff seeks to make the mortgage a lien upon the property in the hands of an innocent purchaser, for a valuable consideration, and in effect to hold Bradley’s partners liable for his share, which he long since received and appropriated as he has thought best. With diligence the plaintiff could have protected himself, and have imposed upon and followed the stock received by Bradley with the burden of his mortgage.
It would be unjust in the extreme to visit upon the corporation and Bradley’s partners, innocent parties, the loss of the plaintiff, sustained through his silence and laches, and which frankness and timely action would have avoided.
The conclusion-reached is that the complaint should be dismissed, with costs.
There was no appeal. .■
NOTE ON PARTNERSHIP REALTY.
The leading cases in this State on partnership realty are Buchan v. Sumner, and Collumb v. Read. In the former it was held by Chancellor Walworth:
(Buchan v. Sumner, 2 Barb. Ch. 105, Chan. 1847), that real estate taken by a partnership for debts due to it, or purchased for partnership use, is, in equity, chargeable with the copartnership debts, and with any balance which may be due from one copartner to another, upon winding up the affairs of the firm. To same effect is Smith v. Tarlton, Id. 336, Supreme Ct. Sp. T., 1850; Buckley v. Buckley, 11 Barb. 43. Compare Costan v. Clarke, 3 Edw. 428).
But as between the personal representatives and heirs-at-law of *288 a deceased partner, his share of the surplus of the real estate of the copartnership is treated as real estate (Buckley v. Buckley, above).
In Collumb v. Read, 24 N. Y. 502 (Ct. of App., 1862, opinion by Denio, J.), it was held that where land is conveyed to two or more persons by a common deed of conveyance, they become tenants in common, and each is at law considered separately seized of his individual share, as fully as though they derived title under separate conveyances from different sources. But if they are, at the same time, copartners, and the land was purchased with partnership funds and for partnership purposes, it is deemed, in equity, converted into personalty, and is administered as such in winding up the firm affairs. Hence it is properly appropriated, in first instance, to payment of partnership debts, and it may therefore be assigned by the firm for benefit of partnership creditors. See also Chamberlain v. Chamberlain, 44 Super. Ct. (J. & S.) 116.
The following authorities will afford a convenient clue to the rulings on this subject in other States.
Dilworth v. Mayfield, 36 Miss. 40 (1858, opinion by Hakdy, J.). If the object of a partnership be the acquisition of land only, with nothing to indicate an intent of subsequent disposition or use as partnership stock, except a stipulation to share losses and profits, the land acquired by the firm may be considered as real estate; and on the death of one of the partners will go to his heirs, and not to his administrator. So held of a partnership for purchasing land sold for taxes.
Shearer v. Paine, 94 Mass. (12 Allen), 289 (1866, opinion by Colt, J.). A. and B. were partners, A. carrying on the business of the firm in Boston, and B. in New Orleans. A. took in C. as a partner in the business carried on in Boston, and A. and B. agreed, in writing, that after a settlement with C., all the business in Boston should be settled by articles of agreement between A. and B. Eeal estate was afterwards acquired by A. & C. in Massachusetts and other States, with partnership funds, and was agreed to be treated as partnership property. A. died. Held, that the administratrix of his estate could not maintain a bill in equity to compel C. to sell his said real estate as surviving partner, and to account to her directly for the proceeds; but that B., as a surviving partner of the original firm, had a right to insist on C. ’s accounting with him therefor.
In the same controversy, after a settlement of the affairs of the Subsidiary partnership had been had, the administratrix filed another bill to compel the conversion and division, as personalty, of the real-estate and of bonds, on executory contracts, for the purchase, by the *289 partnership, of real estate, &c., remaining after the settlement, in which case the following decision was made:
Shearer v. Shearer, 98 Mass. 107 (1867, by Wells, J.). In settling the affairs of a partnership dissolved by death of one of the firm, its real estate is to be converted into personalty only when and so far as necessary to pay claims against the partnership which are in the nature of debt, including balances due to individual partners for advances to the firm or payments made in its behalf, and capital furnished by a partner when it is to be repaid in specific sums; and the surviving partners may apply partnership funds to release its real estate from incumbrances which existed at the time of the purchase thereof in the lifetime of the deceased, and also to fulfill bonds or contracts then entered into by the firm for the purchase of real estate; and equity will not interfere to counteract or modify the operation of the statutes of descent or distribution on the estate of the deceased partner, by converting it into personalty, and dividing, as such, any real estate or interest therein, which, after adjustment of the partnership affairs on the foregoing principles, remains to be divided between his representatives and the surviving partners, nor will interfere at all, except so far as maybe needful to secure to the estate of the deceased, and to the surviving partners respectively, their actual beneficial interests in such real estate, when those interests do not correspond with the legal title.
Stroud v. Stroud, Phillips N. C. L. 525 (1868, opinion by Reade, J.). If there is a surplus after the application of partnership real property to the payment of partnership debts, it retains its character as real property, and descends to the heir, and the widow takes her dower. And in such case a widow is entitled to have an account of the partnership affairs, if necessary for the purpose.
Kelly v. Greenleaf, 3 Story C. Ct. 93 (Circ. Ct. [Mass.] 1843, opinion by Stout, J.). In this case, a bill by a surviving partner against the administrator, the widow, and the heirs of the deceased partner, who had been the managing partner, the bill joining also as defendants persons having or claiming liens on the real property, was sustained, to reach real property which the deceased partner, without knowledge of the complainant, had purchased with partnership funds, and to have it sold and the proceeds applied first to the discharge of the liens, and then to the discharge of a debt due from the deceased partner to the partnership.
Wilcox v. Wilcox, 13 Allen (Mass.) 252. It is not the rule that a partner has a right to have the real, as well as personal property sold, in the absence of unsatisfied debts and unadjustable balances, and that the widow and heirs acquire no beneficial interest in the real *290 estate. If there are no unsatisfied debts and balances, the heirs are entitled to a partrtion, and the executor of the partner cannot prevent it by setting up a possible claim in the creditors of the copartners; if there are any, they are to assert their own rights.
Putnam v. Dobbins, 38 Ill. 394 (1865, opinion by Lawrence, J.). Where two partners take real estate in satisfaction of a debt, the deed conveying to them jointly, each takes a moiety of the legal title; but if it appear that their interests in the partnership were unequal, they are in equity treated as owning the land in the same proportion as their partnership interests, and a conveyance by one partner, who owned more than a half share, or by his executor under a power in the will, gives the grantee a legal title to one-half, and an equitable title to the further interest of such partner.
Wilcox v. Wilcox, 13 Allen (Mass.) 252 (1866, opinion by Wells, J.). The real estate of a copartnership, although purchased with partnership funds and held and used for partnership purposes, if not required for the payment of partnership debts or the adjustment of balances between the partners, is to be treated as realty in the settlement of his estate. The doctrine of equitable conversion, in these cases, is limited to holding the property liable to the fulfillment of all copartnership operations, before it can be taken as a part of the' separate estate of the individual copartner. The equities which are raised for the protection of the copartners between themselves, and of their joint creditors, do not avail between the heirs and the next of kin. The legal estate passes to the heirs, subject to the dower. The lien of one of the partners on the real estate does not continue after the joint debts are paid, and all balances between the several copartners fully adjusted. In this case, the court reiterated the decision in 4 and 5 Mete., as the statement of the extent and limit of the rule.
Hale v. Plumer, 6 Ind. 121 (1855, opinion by Goodkins, J.). If there is nothing to show that- the partners have impressed on their real estate the character of personal property, nor that it is necessary to pay partnership debts, it is to be regarded as real property, for the purpose of descent, dower, &c.
Goodburn v. Stevens, 5 Gill, 1 (1847, Ct. of App., opinion by Martin, J.). Where there is no agreement between the partners, expressed or implied, impressing upon the land the character of personalty, the true rule is that the interest of the deceased partner in the partnership lands is to be treated as real - estate. The doctrine of' treating it as personalty stands on the trust implied from the relation of partnership, and the fact that the estate was brought into the firm, - or purchased with the funds of the partnership, for the convenience and accommodation of the trade. “For this reason, in whosesoever *291 name the legal title may reside, the estate is held, in the eye of a court of equity, for the use of the partners as the cestui que trust, and if a partner dies, the legal estate of which he was seized as a tenant in common, passes to his heirs or devisees, clothed with a similar trust in favor of the surviving partners, until the purposes for which it was acquired have been accomplished.
But when all the claims against the partnership have been satisfied, the partnership account adjusted, and the object of the trust fulfilled, in a case where the partners have not, either by an express or implied agreement, indicated an intention to convert their lands into personal estate, no valid reason can be assigned why the real estate should not be treated, in a court of equity, as at law, according to its real nature.
Parsons (Theoph.) Partnership (Boston, 1867), 346. The author, after alluding to the doctrine of a lien in favor of creditors, worked out through the partners, says: Among the purposes for which the law recognizes a partnership as a legal, though not an incorporated body, “is the placing of its relation to its creditors, on the basis of contracting its own debts, and having its own creditors, and possessing its own property, which applies to the payment of its debts. After this relation is exhausted, or after this work is done, there is a resolution of this body into its elements. ” Then come up the new relations between those who were the members of this body, and those who were it's creditors. If the joint debts have been so paid in full, there are no joint creditors; and they who were partners own the remaining property, free from all incumbrance, except each other’s rights, and they share the remainder between them.
The same author (p. 371), after very clearly explaining the reason of the different English rule, declares the rule in this country to be, that, when the real property of a partnership has fulfilled all its functions as assets in respect of the partnership, the partners, and the creditors, and is no longer wanted for these, it may now become, in their hands who have the legal title, real estate, and subject to all incidents as such, “ because the same persons with us take the personalty and inherit the realty, and it will be much simpler and easier for them to take at once as realty that which is realty. The following, then, is the American rule: Real estate, purchased and held as partnership property, is so treated in equity, and subjected to all the incidents of partnership property. If there be death, the surviving partner, whether he hold the whole title, or hold it in part, or hold none of it, if he be a creditor of the partnership, has the same rights against the real estate, and only the same, which any other creditor has. Rut this real estate goes to pay the debts of the partnership, *292 and only after they are paid does it¡ or what is left of it, become the property of the partners, or their representatives, free from all claims; apd then it is divided among them just as so much money capital would be. But it then becomes at once real estate, or rather, all the incidents and qualities of real estate revive.” ....
‘•The heir always takes the real estate in order to support the legal title, and is then held as trustee for all those purposes to which the land must be devoted in order to make it effectually partnership property; having, however, the right to require that the real property shall not be sold to pay debts until all the personal property is exhausted. When these are all fulfilled, he then holds it discharged from claim precisely as if it had never been othenoise. If land be conveyed to partners in fact as partnership property, but in form to them as tenants in common, and one dies, his heir becomes tenant in common with the other partners."
Dilworth v. Mayfield, 36 Miss. 40 (1857, opinion by Handy, J.). The survivor of a partnership which owned lands under such circumstances that they at law descended subject to the equitable lien for the benefit of creditors, may sustain a bill against the heirs of the deceased member and against his administrator; also, to have an account taken of the partnership, and to enforce the complainant’s lien on the lands for amount due him for advances, and to charge the personal estate of the deceased partner for any balance that might remain after exhausting the partnership land. The heirs are necessary partners, because the legal title is in them; the administrator is a proper party, because an ascertainment of the indebtedness to the complainant, of the estate of the deceased partner is right, &c.