By the Court.—O’Gorman, J.
The action is in ejectment, and was brought by the plaintiff as one of the heirs at law of Frederick Grote, deceased, who was in his life time seized in fee-simple, of sixteen undivided twentieth parts of a lot of land, with the buildings thereon, situate in Fourteenth street, opposite Irving Place, in the city of New York; and plaintiff claims in the complaint that the deceased in his lifetime, prior to 1880, made a will whereby he devised to her all his interest in the said lot and premises.
The defendants allege that the deceased made, at á later period, a valid will, on September 16, 1881, in which he revoked all former wills, and devised all his interest in said lot and premises to the defendants. This will has not been admitted to probate, but is the subject of a litigation now pending before the surrogate of the county of New York. The defendants also set up in their answer that the said lot was. during the lifetime of the deceased, owned and held *278 by him and the defendants Augustus H. Giróte and a Joseph Kapp, as partners, comprising the firm, doing business under the firm name of “F. Giróteand that said lot and buildings thereon have been, and are now, occupied by the said defendants as survivors of said firm.
The learned trial judge ordered the issue as to whether the lot was partnership property or no, to be first tried.
After a careful examination of the. case, we are of the opinion that the preponderance of evidence is in favor of the conclusion, as a question of law, that the property in suit, although conveyed to the deceased Frederick Giróte by name, was, in fact, intended by him to be partnership property, and was so intended and so treated by the other defendants, who were then members of said firm.
The premises in question were conveyed to the deceased Frederick Giróte by deed executed by William Steinway, on December 10,1870. At that time the name of the firm was “Frederick Giróte,” and it continued to be so named until June, 1872, when the name of the firm was changed to “ F. Giróte & Co.” William Steinway testifies that in the negotiation about the purchase of the lot and premises, the deceased said that he wanted the property for the firm, to be occupied by the firm, to be used for the purposes of the firm—to hold it together—and that if they could make some money out of it by the rise, they would make it together. The purchase price of the lot was, to a great extent, paid by the firm. A building was erected on the lot for the business of the firm, and was used in that business; and the account books of the firm show that the expense of erecting that building was charged against the firm in their accounts. The first building was destroyed by fire within six months after its erection. It was rebuilt in 1873, by the firm at a cost of about $80,000, which was supplied by the firm, and paid for by checks of the firm drawn in the name of “F. Giróte & Co,” which had then become the name of the firm. The premises were insured in the name of “ F. Giróte & Co,” and the premiums were paid by that firm. The accounts of the firm were for some time not kept in *279 accordance with exact rules of book-keeping. For seven years after the erection of this latter building, no rent was charged on the books of the firm for the use of the build ing. When entries of rent were made, a charge for rent was made in the profit and loss account of the firm. A purchase money mortgage of §10,000, was given to Steinway on the sale of the premises to Frederick Giróte. The deceased told the book-keeper of the firm that the firm was liable on that mortgage, and directed him to enter it on the bond and mortgage account, in the account book of “ F. Giróte & Co,” which was done.
From these and other facts in proof, it seems to be sufficiently clear that these premises were not purchased, held, used, paid for, or sustained by, or for Frederick Giróte, the grantee, alone, but by and for him and the other members then composing the said partnership. The trade in which the firm was concerned was dealing in ivory ; and it is to be noticed, that the interests of these several persons in the trade partnership business were different, from their interests as partners in this real estate. As partners in trade, they were entitled to share in the profits and loss of the firm thus : Frederick .Giróte, ££; A. J. Kapp, &; Augustus H. Giróte, As partners in the real estate, their shares were as follows: Frederick Giróte, f; A. J. Kapp, Augustus H. Giróte, That is to say, in both cases, Frederick Giróte had the same interest—one-fifth—and the remaining two-fifths were divided in the former case in unequal proportions, in the latter case in equal proportions, one-fifth belonging to all. From this fact, with others, the learned counsel for the plaintiff argued that Frederick Giróte, Augustus H. Giróte, ■ and A. J. Kapp held the real estate, not as partners holding partnership property, but as tenants in common, in which case, on the assumption that the deceased died intestate, she would be entitled, as one of his heirs at law, to inherit a share in his estate.
The fact of this difference in the proportions of interest in the trade partnership business, and as partners in the *280 real estate, does not, in the face of the other evidence to the contrary, justify such a conclusion.
The only question in this case about which any doubt, in our opinion, should be entertained, is whether this issue, of whether or no this real estate belonged to the partners, as partners, should have gone to the jury as a question of fact. On consideration, we do not think that any error at the trial has been committed in this respect. On all the facts as they stand in the case, a question of law arises on this issue, and only a question of law, and the ruling made by the learned trial judge on that question is sustained by controlling authorities.
Real estate so purchased for partnership purposes, is deemed to be personal property, although it stands in the name of one of the parties (Hoxie v. Carr, 1 Sumn. 173 ; Tarbell v. Bradley, 7 Abb. N. C. 279). It is a question of intention to be determined by the evidence. The partner holding title is a trustee for the firm and its creditors, and when this trust is discharged by the payment of the debts, and the settlement of the claims of the partners as between themselves, the character of realty again revives (Fairchild v. Fairchild, 64 N. Y. 471; Collumb v. Reed, 24 Id. 505; Chamberlin v. Chamberlin, 44 Super. Ct. 116).
It also appeared that the surviving partners were in possession, as equitable mortgagees, for the advances out of partnership funds, and, therefore, entitled to maintain their possession until payment of those advances, if the real estate were not strictly partnership property.
This ejectment action, therefore, on the part of the plaintiff, cannot be sustained.
The exceptions as to the admission of testimony, do not appear to be well taken, or material.
As to the allowance, there was no proof given as to what was the value of the particular lot in question, the affidavit on the subject giving only the value of that lot with others in gross. The allowance should have been based upon the amount of damages claimed by plaintiff, that is $2,000. The allowance should be made one hundred dollars.
*281 The judgment appealed from is affirmed, with costs; and the order denying a motion for a new trial is also affirmed, with ten dollars costs. The order granting the extra allowance is modified by reducing the amount to one hundred dollars.
Sedgwick, Ch. J., concurred.